### No. 2378
### Second Circuit

---

## RIVERS v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY

---

(April 10, 1926, Opinion and Decree)
(May 7, 1926, Rehearing Refused)

---

(*Syllabus by the Editor.*)

1. Louisiana Digest—Railroads—Par. 86, 89.

The engineer of a railway motor car who, upon seeing a cow on the railroad right-of-way start to cross the track, blew the whistle but did not apply the brakes until it was too late to avoid the accident, although a prompt application of the brakes would have avoided the accident, was negligent, and the railway company will be held liable in damages.

(Civil Code, Art. 2315. Editor's note.)

2. Louisiana Digest—Appeal—Par. 625.

The finding of fact by the trial court as to the value of a cow killed by the railway, being clearly correct, is affirmed.

Appeal from the First Judicial District Court of Louisiana, Parish of Bossier. Hon. T. F. Bell, Judge.

Suit by Henry Jefferson Rivers against St. Louis Southwestern Railway Company.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Thomas W. Robertson, of Shreveport, attorney for plaintiff, appellee.

Wilkinson, Lewis & Wilkinson, of Shreveport, attorneys for defendant, appellee.

ODOM, J. This is a suit to collect the sum of $200.00, the alleged value of a cow killed by a motor-car or train operated by defendant on its line of railroad.

The defense is that the engineer in charge of the car was not negligent and that the killing of the cow was unavoidable.

The district judge found that the engineer was negligent and gave judgment in favor of the plaintiff for $200.00, which, be held, was the value of the cow killed, and defendant appealed.

### OPINION

Plaintiff's cow was run over and killed in the daytime at Alden Bridge, on defendant's line of railroad, by a motor-

car or train owned and operated by defendant.

The car or train consisted of a large 175-horsepower gasoline engine and a coach or car equipped for carrying baggage and passengers, and was 90 feet long.

The car was going south at the time the cow was struck. The track at that point and for a distance of five or six hundred feet north is straight, and we gather from the testimony that there is nothing on either side of it to obstruct the view.

The car or train at the time was going about thirty or thirty-five miles an hour, which is not shown to be an excessive or unusual rate of speed.

Just prior to the time that the cow was struck she was grazing on the side of the track, and one witness says about six feet from it, and when struck she was attempting to cross the track.

The plaintiff called two witnesses who saw the accident, one of whom was standing about 60 yards away and the other near enough to see it and detail the circumstances.

Mr. Northcut testified that he was standing on the west of the track and that the cow was grazing between the switch and the main line; that when the car was about 150 yards or 450 feet away the whistle was blown; and that he observed no effort on the part of the engineer to stop the car until after the cow was struck.

He says the cow was dragged 450 feet after she was struck.

W. O. Weston testified that he was standing about 60 yards away, says that the whistle was sounded when the car was about 150 or 160 yards (450 to 480 feet) from the cow, and that when the car was about 50 yards from her the cow went upon the track and that:

"He (referring to the engineer) never offered to stop the car until he had dragged her about one hundred and fifty yards (150 yds.), where they pulled her out."

And that the train did not slow down and that:

"From the time that he whistled until he hit her he did not stop or anything. He began whistling about one hundred and fifty yards (150 yds.) from her."

And that:

"He had plenty of time to stop from the time that she stepped on the track."

One of these witnesses says he heard "no grinding of the brakes".

Mr. H. Nichols, the engineer in charge of the train, testified that the car had been inspected only a few hours previously and that the brakes as well as the track were in perfect condition.

He says that when he first saw the cow she was on the left-hand side of the crossing (from which we infer that the cow was killed at a crossing); that the track was straight at that point and for a distance of five or six hundred feet to the north; and he was asked:

"How far was the engine from the cow when she started to cross the track?"

And he said:

"I suppose four or five hundred feet."

And being asked:

"How far was the engine from the cow when she got on the track?"

He said:

"Oh, I suppose twenty-five feet (25') or thirty feet (30')."

And he said further:

"When I saw her going to get on the track or likely to I applied the brakes and emergency."

On being further questioned as to the distance away from the cow he was when he observed that she was moving towards the track, he said:

"Well, I should say that I was three or four hundred feet when I first saw that she was going on the track—that she was going to try to cross the track."

He further testified that as soon as he saw that the cow was going to cross the track he applied the brakes and that the "brakes worked good", and that under the conditions which prevailed at that time he could stop the car within six hundred feet.

Construing all the testimony together, we think the engineer saw the cow moving towards the track when he was four hundred feet away from her. He said that when he saw her going toward the track he immediately applied the brakes and that they worked perfectly. But, in view of the fact that the car could be stopped within 600 feet, according to the engineer's testimony, and the fact that the undisputed testimony is that it ran 450 feet after striking the cow, making a distance of 850 feet which the car ran after the engineer first saw the cow before it stopped, we are forced to the conclusion that the engineer is mistaken when he says that he applied the brakes and the emergency as soon as he saw the cow going toward the track. If he had applied the brakes when he was 400 feet from the cow, and if the car could be stopped within 600 feet, as he says it could, then the car would have stopped 200 feet from where the cow was struck. But the testimony is that it went 250 feet further than that.

It therefore follows necessarily that he did not apply the brakes when he says he did.

These facts, based upon the engineer's own figures, add great strength to the testimony of the witnesses for the plaintiff who say that there was no effort to stop the car until the cow was struck.

We think it very reasonable to assume that the brakes were not applied until at or about the time the cow got on the track and the engineer says she got on the track when the engine was 25 or 30 feet from her. The car ran 450 feet after she was truck. Therefore, it ran 475 or 480 feet after she got on the track.

We are further of the opinion that if the brakes had been properly applied when the engine was 25 or 30 feet from the cow, the car could have been stopped within 475 feet in view of the fact that the cow was not knocked off the track but was literally dragged a distance of 450 feet, and that when the car stopped she had to be pulled from under it. Certainly the dragging of the animal impeded the progress of the car to some extent and aided the brakes in bringing the car to a stop. Unobstructed, the car could have been stopped within 600 feet.

Our conclusion is that when the engineer saw the cow approaching the track at a distance of 400 feet away he thought that she would get across before the engine reached her or that the sound of the whistle would frighten her and cause her to turn back and that he took the chance.

The testimony shows that the cow was moving very slowly, and in view of the speed of the car he could not reasonably expect that she would get across the track before he reached her. The prudent and cautious thing for him to do would have been to apply the brakes and emergency the moment that he saw the cow moving toward the track, and his failure to do so was negligence. If he had applied the brakes and emergency when he was 400 feet away from the cow and had thereby slackened the speed of the car, we have no doubt that the cow would have gotten across the track in safety. There is no evidence or suggestion that the cow did the unexpected by changing her course or by stopping on the track, and that the collision was unavoidable for that reason.

The testimony convinces us that the engineer was negligent in the handling of the car and that it was due to his negligence that the cow was killed.

Counsel for defendant have cited in brief Thompson on Negligence, Section 2012, to the effect that a railroad company is under no obligation to slack its speed and disarrange its time table in order to drive stock off the track, and Sanders vs. Ill. Cent. R. R. Co., 127 La. 917, 54 South. 147, to the effect that express trains need not be run slowly for fear of killing stock.

But these authorities are not in point, for it is not charged nor do we hold that defendant was negligent in operating its car at a speed of 30 to 35 miles an hour; and in the Sanders case, supra, the court found, as a fact, that the engineer was looking ahead and saw the animal "but not in time to even blow the whistle, let alone stop the train".

Counsel for defendant also cite the case of Moore vs. K. C. S. Ry. Co., No. 1493, decided by this court, which case also is not in point; for the court held that when cattle appear upon the right of way of a railroad a sufficient distance ahead of a train to enable those in carge of the train to stop it before reaching them when the brakes are in perfect condition, no duty devolves upon those in charge of the train to stop it or slacken its speed—

"until the stock in question takes such action that it is reasonably probable they will be struck by the train, or may be struck. The simple fact of stock along the right of way, giving no evidence of going on the track or causing an accident, may be disregarded by those in charge of the train, provided the equipment of the train is in good condition and its operation careful."

In the case at bar the engineer not only saw the cow when he was 400 feet away from it but at that distance saw that she was moving toward the track, and our holding is that if he had at once applied the brakes the speed of the train would have been so slackened that she would have gotten across unharmed.

## AS TO THE VALUE OF THE COW

All the testimony shows that the cow was worth $200.00. She was a pedigreed, registered Jersey milch cow a little over 11 years old. Mr. J. Morgan Cornich, who had lived in Bossier parish for nineteen years and been in the stock business all his life, says that she was the finest Jersey cow he ever saw. Plaintiff paid $200.00 for her three years ago and kept her in first-class condition. The testimony shows that he offered to assess the cow at $200.00 but was informed by the assessor that no one else assessed cows that high.

Mr. Joe Lowry, who sold the plaintiff the cow, testified that he had been offered $250.00 for her, but that he sold her to plaintiff for $200.00 because he knew he would take care of her, and he reserved the right to buy her back at that price in case plaintiff desired to sell her.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed, with costs.